# LAW OFFICE OF DONALD F. BURKE
## 45 GALE ROAD
## BRICK, NEW JERSEY 08723
## (732) 966-4922
## Email: DonaldBurkeEsq@gmail.com

**DONALD F. BURKE, ESQ.**
*Certified by the New Jersey Supreme Court as a Civil Trial Attorney*
*Member of the Bars of New Jersey & New York*

**DONALD F. BURKE JR., ESQ.**
*Member of the Bars of New Jersey & New York*

April 28, 2016

VIA ECF
Honorable Leda Dunn Wettre, U.S.M.J.
United States District Court
District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

Re: <u>C.G.B., Plaintiff, v. AIDA SANTA LUCIA, VAROUJAN KHOROZIAN, KYLE KHOROZIAN, DEREK KHOROZIAN and JOHN DOES 1-5 (being agents, servants and employees of the above as a continuing investigation may reveal who are fictitiously named because their true identities are unknown), Defendants.</u>
United States District Court
District of New Jersey
Civil Action No.: 2:15-cv-03401 (SDW-LDW)

Dear Judge Wettre:

Kindly accept this letter setting forth the status of the above matter and seeking leave to file a motion to extend and compel discovery from defendants who have not met their obligations under Rule 26, 33 and 34 but, nevertheless, insist without any record support that this case is frivolous. We also seek entry of a Discovery Confidentiality Order which we forwarded to defendants on April 8, 2016 but have received no response.

<u>FACTUAL BACKGROUND</u>

This is an action against defendants Aida Santa Lucia, Varoujan Khorozian, Kyle Khorozian and Derek Khorozian (deceased) (individually and collectively "defendants") who

brought C.G.B. from her native Cameroon to the United States under false pretenses in order to work in their home as a domestic servant.

Defendant Santa Lucia secured a B-1 visa for C.G.B. into the United States which is issued to those seeking entry for business purposes. Upon information and belief, defendant Santa Lucia previously brought citizens from Cameroon and other countries into the United States on B-1 Visas. Defendant Santa Lucia has previously used these Cameroonians and citizens of other countries as domestic servants.

C.G.B., who was 49 years-old when she was brought to the United States, is a former nun of the religious order Franciscan Missionary Sisters of the Sacred Heart. At the time defendant Santa Lucia enticed C.G.B. to come to the United States, C.G.B. was a teacher in Cameroon.

Defendant Santa Lucia contacted C.G.B. about an offer to work in the United States. The position was to include pay at the going rate and more importantly, defendant Santa Lucia promised to obtain permanent residency status for C.G.B. in the United States. C.G.B. accepted the offer because she viewed it as a great opportunity for her and it would provide a better future.

When she arrived in the United States, defendants required C.G.B. to work as a domestic servant in their 7 bedroom, 11 bathroom house in Alpine, New Jersey. Defendants paid C.G.B. $200 per month.

Defendants used a variety of means to compel C.G.B.'s labor including threatening C.G.B. that if she left them she would be deported. C.G.B. rarely had the opportunity to leave defendants' home for personal reasons and fell into deep cultural and linguistic isolation. Even if she had left defendants' home, in Alpine, New Jersey there is little to no access to public transportation or other means of transportation.

The conditions became intolerable for C.G.B. after defendants repeatedly yelled and screamed at her claiming, among other things, C.G.B. was not cleaning the house in an acceptable manner. Combined with her isolation, C.G.B. felt belittled, inferior and abused.

Defendant Santa Lucia never secured permanent residency status for C.G.B. as she had promised. When C.G.B. could take it no more, and decided to leave, she was told by defendant Santa Lucia that if she left defendant Santa Lucia would call immigration (as she

had already overstayed her visa while working in the defendants' home) and have C.G.B. deported. C.G.B. told defendant Santa Lucia she would call the police.

This caused defendant Varoujan Khorozian to cut off C.G.B.'s access to a cell phone she had been provided and to transport C.G.B. to Newark, New Jersey where she was abandoned at the Bus Station. Defendants have threatened to use their influence to have the authorities in the United States and Cameroon punish C.G.B..

Since C.G.B. left the defendants' home, she has lived in fear that defendants would find her and make good on their threats to have her prosecuted and/or deported. This fear has taken an emotional toll on C.G.B., who' has lived in the shadows of society. C.G.B. has been unable to travel freely as a result of her fear, her uncertain immigration status and her concern that defendants will carry out their threats.

## APPLICABLE LAW

### Victims of Trafficking and Violence Protection Act of 2000, 18 U.S.C. § 1595 (VTVPA)

18 U.S.C. § 1589 makes it unlawful to "knowingly provide[ ] or obtain[ ] the labor or services of a person . . . (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint."

Here, defendants knowingly provided or obtained C.G.B.'s labor in violation of the forced labor provisions of 18 U.S.C. § 1589 through (i) threats of serious harm, including psychological, financial, or reputational harm, against C.G.B.; (ii) threats of physical restraint to C.G.B. through threats of forced deportation, and other affirmative acts; (iii) a scheme, plan, or pattern intended to cause C.G.B. to believe that if she did not perform labor for defendants, she or her family would suffer serious harm or physical restraint; and (iv) abuse or threatened abuse of law or legal process by promising to retain an attorney in order assist C.G.B. with the legalization process, then allowing her temporary visa to expire and telling C.G.B. that she would be jailed and deported if she ceased to provide her labor to defendants.

Further, 18 U.S.C. § 1590 makes it unlawful to "recruit[ ], harbor[ ], transport[ ], provide[ ], or obtain[ ] by any means, any person for labor or services in violation of [the

3

sections included in Title 18, Part I, Chapter 77]." Here, defendants knowingly harbored, transported, provided for, and obtained C.G.B. for labor in violation, or attempted violation, of numerous provisions of Chapter 77, including 18 U.S.C. §§ 1584, 1589, and 1592(a). Further, defendant Santa Lucia recruited C.G.B. to obtain her labor in violation, or attempted violation, of numerous provisions of Chapter 77, including 18 U.S.C. §§ 1584, 1589, and 1592(a).

C.G.B. brings this claim for relief pursuant to 18 U.S.C. § 1595, which provides that "[a]n individual who is a victim of a violation of this chapter [18 USCS §§ 1581 et seq.] may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter [18 USCS §§ 1581 et seq.]) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees."

<u>New Jersey Human Trafficking Prevention, Protection and Treatment Act</u> N.J.S.A. § 2C:13-8.1 (HTPPTA)

The HTPPTA provides that a person is guilty of human trafficking if he or she: "(1) knowingly holds, recruits, lures, entices, harbors, transports, provides or obtains, by any means, another, to . . . to provide labor or services: . . . (e) by means of the abuse or threatened abuse of the law or legal process; (f) by means of fraud, deceit, or misrepresentation against the person; . . . or (2) receives anything of value from participation as an organizer, supervisor, financier or manager in a scheme or course of conduct which violates paragraph (1) of this subsection . . . ." N.J.S.A. § 2C:13-8(a).

The HTPPTA entitles a victim to an award of damages in an amount that is the greater of:

> (1) the gross income or value to the defendant of the injured party's labor or services; or
>
> (2) the value of the injured party's labor or services as determined by the "New Jersey Prevailing Wage Act," P.L.1963, c.150 (C.34:11-56.25 et seq.), the "New Jersey State Wage and Hour Law," P.L.1966, c.113 (C.34:11-56a et seq.), the Seasonal Farm Labor Act, P.L.1945, c.71 (C.34:9A-1 et seq.), the laws concerning the regulation of child labor in chapter 2 of Title 34 of the Revised Statutes, or any other applicable State law, and the "Fair Labor Standards Act of 1938," 29 U.S.C. § 201 et seq., or any other applicable federal law.

N.J.S.A. § 2C:13-8.1(c).

## COMMON LAW CLAIMS

The Complaint also asserts claims pursuant to defendants' failure to pay Federal Minimum Wage in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206, 216; failure to pay Minimum Wage in violation of the New Jersey Wage and Hour Law, N.J.S. § 34:11-56a et seq. and common law claims of false representations and false arrest.

## DISCOVERY

Plaintiff has propounded interrogatories and document requests on defendants which are overdue. Further, plaintiff has sought consent to enter a Protective Order using Appendix S. Defendants have not responded.

Plaintiff has requested records, documents, communications and correspondence between or among defendants and plaintiff as well as between or among defendants and Steve Houston, Mbufor Fonju John; Apolonia Etembe Kono; Essama Obama; Dr. Ahamadou Sardaouna; Emmanuel Anyang Asongwed; Taketcha Nguemezi Yannick; and Suzzane Alime NGono. Also, we requested the records on the computer plaintiff used while at the Alpine, New Jersey address be secured in native format with metadata intact, including stored emails and documents as well as telephone records and photographs. The few records that have been provided are in non-native Microsoft Word document format.

Plaintiff also requested pursuant to Fed. R. Civ. P. 26 the following:

1. Records regarding agreement/relationship between Transafrica Nutech and Leverage Plus, LLC;
2. Correspondence between Leverage Plus, LLC and the U.S. Embassy in Yaounde, Cameroon;
3. Records regarding agreement/relationship between Leverage Plus, LLC and
    a. Renewal Energy International;
    b. Consolidated Engineering;
    c. Leverage Plus, LLC; and
    d. Oceansafe.

The above should have been provided in defendants' Rule 26 disclosures but were not. Defendants have ignored plaintiff's discovery demands. Accordingly, defendants have not been forthcoming regarding discovery and we respectfully seek an extension of discovery and we request permission to engage in appropriate motion practice for a protective order and to compel discovery.

Discovery has been hampered by defendants' prior counsel's requests for delay in order to pursue insurance coverage. Counsel for defendant Santa Lucia has only entered an appearance on April 7, 2016. (ECF 17). Counsel for VAROUJAN KHOROZIAN, KYLE KHOROZIAN, and DEREK KHOROZIAN (deceased) entered an appearance on March 1, 2016. (ECF 15). Now that insurance issues have been resolved, plaintiff respectfully requests permission to file the above referenced motion in order to advance this case.

Thank you.

Respectfully submitted,

Donald F. Burke, Esq.

cc: Victoria Airgood, Esq., HILL WALLACK, LLP, VIA ECF
Linton Turner, Esq., MAYFIELD, TURNER, O'MARA & DONNELLY P.C., VIA ECF