

MBUFOR FONJU JOHN LAW FIRM
REPUBLIC OF CAMEROON
P.O Box 4220 YAOUNDE
☎: + 237 220 22 20 21 / 22 01 23 67 + 237 22 00 77 96

Courrier électronique : mbufonfonju@yahoo.co.uk

ADVOCATE (S) 696 09 24 17
Barrister MBUFOR FONJU John (Esq)
LL.B(Hons) B.L. Cameroon. Barrister & Solicitor –at-Law

ETUDE MBUFOR FONJU JOHN
REPUBLIQUE DU CAMEROUN
B.P 4220 YAOUNDE
☎: + 237 22 20 20 21 / 22 01 23 67 + 237 22 00 77 96

Courrier électronique : mbufonfonju@yahoo.co.uk

Date: 29 MARS 2017

**Re: C.G.B. vs. AIDA SANTA LUCIA, VAROUJAN KHOROZIAN, KYLE KHOROZIAN, DEREK KHOROZIAN.**
**CIVIL ACTION NO. 2:15-cv-03401-SDW-LDW**

## AFFIDAVIT OF CLEMENT NDI

I, MBUFOR FONJU John, a Cameroonian Male Legal Practitioner of the Cameroon Bar Association reside in Yaoundé with a legal address at P.O. Box 4220, Yaoundé, Cameroon. Tel/Fax (237) 22 20 20 21 / 22 00 77 96 / 22 23 67 / 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.

I am solicitor for NDI CLEMENT, Communication Officer and member of the board of directors of Transafrica Nutech Cameroon S.A., a Cameroonian Private Limited Liability Company created in accordance to the OHADA Uniform Act Relating to Commercial Companies and Economic Interest.

I hereby attest under oath that NDI, Clement came before me and under oath provide of his personal knowledge and belief the following statements:

1. My name is CLEMENT NDI I am a Cameroon citizen residing in Yaoundé Cameroon. I am and adult and fully competent to make this declaration.

2. The facts stated herein are true and correct and are based upon my personal knowledge and belief.

3. I have served in a management position at TRANSAFRICA NUTECH S.A. (Transafrica). for over 18 years. I speak, write and read English, but not very well.

4. I am well acquainted with the Plaintiff in this case. I became acquainted with her when the President of Transafrica, ETEMBE KONO Appolonie (Mrs. Kono) did some humanitarian projects with the religious congregation where the Plaintiff was serving at the time.

5. In 2012 the Plaintiff came to Transafrica to offer her services as an English translator. Plaintiff claimed to have learned that Transafrica in joint venture with Consolidated Engineering & Development Company (Consolidated) had secured a contract from the Cameroon government for the developing of Nkombassi City. A multi-billion-dollar project for the development of a new town complete with instruction, 5,000 housing units, a hospital, 2 schools, shopping center, a community enter, a waste disposal plant, a municipal building and numerous other supporting buildings to make it a self-supporting town. The Nkombassi City project received lots of publicity because it is largest project of its kind in Cameroon history and is to be developed with U.S. companies and technology.

. / /

ORIGINAL 29 MARS 2017

6. When Plaintiff came to Transafrica to offer her translator services, the Plaintiff demonstrated her English speak skills. At the time, the Plaintiff was no longer a Nunn but working as a teacher for a local school.

7. Plaintiff would thereafter come on a weekly basis to Transafrica's office to inquire if her services where needed. This went on until Transafrica decided to use Plaintiff's services on a few occasions, when there was a need to properly translate important documents.

8. In August 2013 SANTA LUCIA, Aida (Madam Aida), as the representative of Consolidated, traveled to Yaoundé in response to the Cameroon Minister of Water Resources and Energy's July 17, 2013 invitation to finalize a contract for the development of a waste disposal plant. At this time, Transafrica's office was being remodeled so we worked with Madam Aida from her apartment located in the center of Yaoundé. When Plaintiff came to learn this, she started to come to Madam Aida's apartment on a daily basis and doing everything possible to establish a close relationship with her. Plaintiff would take upon herself to run errands assist with the preparation or the serving of meals without anyone requesting her to do any work. This made it evident the Plaintiff was seeking Madam Aida's support for Plaintiff's request to be Transafrica's translator when Transafrica's directors where to travel to the United States. Plaintiff achieved her goal since soon thereafter Transafrica retained Plaintiff's services when appointing her to accompany Mrs. Kono in her trip to the United States that was to take place in October or November 2013.

9. I am a members of the board of directors of Transafrica, and recall when a resolution was passed for Transafrica to undertake the responsibility to pay Mrs. Kono's and the Plainiff's. travel, living expenses, and their wages while in the United States, where they were being sent to work for Transafrica's Nkombassi City Project. This resolution together with proof of Transafrica's financial capability had to be presented to the United States Embassy in order for Mrs. Kono and the Plaintiff to secure a B-I Visa that is given to people that travel to the United States to conduct business.

10. Mrs. Kono became very ill and her physician would not clear her for travel. As a result, Transafrica decided to send the Plaintiff to the United States alone to start the work with Madam Aida and Mrs. Kono was to join her as soon as he could travel. Since Mrs. Kono did not want Plaintiff to stay in the United States alone, Mrs. Kono asked Mr. Khorozian the favor to house the Plaintiff as a guest in his home until Mrs. Kono was able to resume her travel schedule, and could then stay in a furnish apartment with the Plaintiff, as per it was originally planned for what was to be a one or two months stay.

11. Madam Kono's was cleared for travel about two weeks later, only a few days before the Christmas holiday. It was therefore decided Mrs. Kono would travel after the holidays so the trip was scheduled for mid-January 2014. However, Transafrica then received notice from the Ministry of Housing & Development for a request that Transafrica's director and its engineer travel to the United States with the two government official from the Ministry of Housing that were to be sent to the United States to inspect the technology that Transafrica with the U.S. companies were to implement in the housing project. Soon thereafter, the Cameroon Prime Minister send his January 28, 2014 letter making this a formal request. As a result, Mrs. Kono's trip had to once again be place on hold.

///

ORIGINAL 29 MARS 2017

12. While Plaintiff was in the United States she called Transafrica's office many times. At times when Madam Kono was not available I would speak to her and she would always tell me she was very happy and very well treated by Madam Aida's family. Plaintiff made the same representation in her an email she sent with pictures to Mrs. Kono in January 2014. Everyone in Transafrica seen the pictures Plaintiff sent of the many nice places Madam Aida and her family had taken the Plaintiff.

13. By the time the Cameroon government appointed the two government officials that were to travel to the United States, secured their visas and the funding for their travel expenses was put in place by the Cameroon government, it was mid-April 2014. Madam Kono, Engineer Obama, the General Secretary of the Ministry of Housing Dr. Ahmadou Sardaouna and Technical Director of the Ministry of Housing Emmanuel Anyang Asongwed departure to the United States in early May 2014.

14. Mrs. Kono and Engineer Obama were housed during their two weeks stay in United States as guest in Mr. Khorozian's home, same as the Plaintiff. When it came time for their return to Cameroon Plaintiff requested permission to remain in the United States for a few more weeks. Plaintiff claimed she wanted to take her vacation while in the United States so she could visit her many friend and relative in Pennsylvanian and attend with them a reunion in Georgia. Transafrica board of directors approved Plaintiff's request by agreeing to extended its responsibility to pay for Plaintiff's pay and living expenses.

15. Upon Mrs. Kono's return to Cameroon in May 2014, she instructed me to contact Mr. Khorozian and remind him that prior to his departure to China where he was to contract supplies for the housing project, he should reschedule the return date of Plaintiff's return ticket, which she received when she traveled to the United States. The day later, Mr. Khorozian called and since Mrs. Kono was not available, he spoke to me. Mr. Khorozian informed me that Plaintiff's February 21, 2014 return ticket was no longer valid. Since no one had called to change the travel date prior to the February 21, 2014 scheduled return date. Mr. Khorozian was thereafter requested to purchase a new return ticket for the Plaintiff before he departed in July 2014 to China and Transafrica committed to reimburse him for the cost.

16. Upon Mr. Khorozian return to the United States from his trip to China, we learned that Plaintiff was refusing to return to Cameroon, and that this led Mr. Khorozian to request that the Plaintiff leave his home. A day after Plaintiff left Mr. Khorozian home we received an email where it was stated that after Plaintiff left Mr. Khorozian's home values were found to be missing. This led Madam Kono to request to the Transafrica board of director for their consent for her to travel to the United States in order to meet with the Plaintiff. However, when Madam Kono contacted the Plaintiff by email to request a meeting, Plaintiff refused to meet or give her address or contact telephone number.

17. In the summer of 2015 when we learned that the Plaintiff had filed a lawsuit, Transafrica hired a court officer from the sheriff's office to conduct an investigation into Plaintiff's background. This led to Transafrica learning that Plaintiff was forced out of the religious congregation due to her having misappropriated funds and violating other rules.







18. When I recently was shopping I was approached by one of Plaintiff's friend, Mr. ATANGANA Nicolas, that wanted to know from me if it was true Plaintiff's claim she secured a [redacted] settlement from the lawsuit she filed against the principals of Consolidated, the Santa Lucia family who have house her in their U.S. home and mistreated her. I did not know what to reply other than I did not know. He then stated how can it be possibly I did not know when Plaintiff had been sent to the United States by Transafrica, and Consolidated is a partner of Transafrica, and thanks to Transafrica Plaintiff had just struck it rich in the United States". He then stated this information has been circling around town and spreading like wildfire. When I disclosed this news to Transafrica's board members they were as shocked as I was when I first received this information. We then discuss our concern as to the adverse effect and problems this situation may cause to Transafrica's contract with the Cameroon Government. We all then came to understand the reason for which Transafrica has recently being inundated with calls from people offering their English translators service, as it became evident others are now seeking to follow Plaintiff's footsteps.

I swear to the above statements to be true to the best of my knowledge and belief.

[Stamp: TRANSAFRICA-NUTECH ALLIANCE FOR AFFORDABLE HOUSING AND ECONOMIC GROWTH CAMEROON]

[Signature]
_______________
...NDI, Clement

Sworn to at Yaoundé this 29th day of March, 2017

Before Me Commission for Oath

MBUFOR FONJU, John Esq. [Signature] _______________

[Stamp]

✉: 4220 Yaoundé – Cameroun
Cabinet situé au Rond Point Nlongkak – 2ème étage,
Appartement de l'immeuble Cocimecam
face station Total Nlongkak à 300 m de Niki Nlongkak