REDACTED VERSION - TO BE FILED <u>PUBLICLY</u>

(FILED PARTIALLY UNDER SEAL TO
PROTECT SEALED SETTLEMENT TERMS)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| C.G.B., | CIVIL ACTION NO. |
| Plaintiff, | 15-3401 (SDW) (LDW) |
| v. | |
| AIDA SANTA LUCIA, VAROUJAN KHOROZIAN, KYLE KHOROZIAN, DEREK KHOROZIAN and JOHN DOES 1-5, | REPORT AND RECOMMENDATION |
| Defendants. | |

<u>**LEDA DUNN WETTRE, United States Magistrate Judge**</u>

Before the Court are the Motions of plaintiff C.G.B. to Enforce the Settlement Agreement and Award Reasonable Attorney's Fees (ECF No. 101) and to Strike Affidavits Submitted In Support of Defendants' Cross-Motion as Hearsay (ECF No. 112), and of defendants Varoujan Khorozian, Kyle Khorozian, the Estate of Derek Khorozian (collectively, the "Khorozians" or "Khorozian Defendants") and Aida Santa Lucia ("Santa Lucia") for Rescission or, Alternatively, Reformation of the Settlement Agreement (ECF Nos. 102, 103). United States District Judge Susan D. Wigenton referred the motions to the undersigned for a Report and Recommendation. Having considered the parties' written submissions on the motions and the testimony and exhibits introduced at the evidentiary hearing held on October 26, 2017, for the reasons set forth in this Report and Recommendation, and for good cause shown, this Court recommends that plaintiff's

Motion to Enforce the Settlement Agreement be **GRANTED**, that plaintiff's Motion To Strike Defendants' Affidavits be **GRANTED IN PART AND DENIED IN PART**, that plaintiff's Motion For Attorney's Fees be **DENIED**, and that defendants' cross-motions be **DENIED**.

## I.      BACKGROUND

### A. Plaintiff's Allegations and Claims

Plaintiff C.G.B, a former nun and teacher from Cameroon, filed this action through her counsel on May 15, 2015. *See* Complaint ("Compl."), ECF No. 1 ¶¶ 5-6. Plaintiff essentially alleges that defendant Santa Lucia made false representations to induce plaintiff to travel from Cameroon to New Jersey and then placed plaintiff in the home of the Khorozian defendants as an involuntary domestic servant. *Id.* ¶ 1. Plaintiff alleges Santa Lucia offered her a position to work as a translator and to obtain permanent residency in the United States. *Id.* ¶¶ 10-11. Plaintiff avers that when she arrived, she was forced to work in defendants' home for twelve hours a day for fifty cents per hour and was subjected to "inhumane working and living conditions." *Id.* ¶¶ 1, 10-16. The Complaint further alleges defendants repeatedly yelled at plaintiff, claiming she was not cleaning properly, and threatened that if she left, she "would be hunted down, jailed, and deported." *Id.* ¶¶ 17-20. Plaintiff alleges that when she told Santa Lucia she was going to call the police, defendant Varoujan Khorozian "cut off her access to her cell phone and transported [her] to Newark, New Jersey where she was abandoned at a [b]us [s]tation." *Id.* ¶¶ 24-25.

Based on these allegations, plaintiff asserted the following claims in the Complaint: (1) violations of the Victims of Trafficking and Violence Protection Act of 2000, 18 U.S.C. §§ 1589, 1590, 1595; (2) violations of the New Jersey Trafficking Prevention, Protection & Treatment Act, N.J. Stat. Ann. 2C:13-8.1; (3) minimum wage violations of the Fair Labor Standards Act and New Jersey Wage & Hours Law; (4) fraudulent misrepresentation; (5) false imprisonment; and (6)

punitive damages. *See generally id.* Defendants answered the Complaint, denying the allegations. *See* ECF No. 10.

### B. Discovery

Discovery commenced in January 2016 and was contentious from the start. Defendants sought leave early in discovery to move for summary judgment. (ECF Nos. 21, 22). Plaintiff in turn sought leave to move to compel discovery responses from defendants. (ECF No. 23). The Court was required to resolve numerous disputes concerning written discovery and depositions.

One significant dispute that seemed to precipitate the settlement of this action concerned the deposition of defendant Aida Santa Lucia. The issues began with Santa Lucia declining to appear for her deposition that had been noticed by plaintiff, except on very specific dates and only in Palm Beach, Florida. She claimed this limitation on her availability was due to a medical condition that required her to depart the country shortly for treatment for an indefinite period of time. The issues continued with Santa Lucia's refusal to allow her deposition to be videotaped, despite plaintiff's counsel having properly noticed the deposition to be videorecorded and despite the Court's compelling her to comply with the notice.[1] *See* ECF No. 54. Santa Lucia and the

---

[1]    Santa Lucia claimed that she would be subject to danger if her deposition were to be videotaped, even if its distribution was restricted under the Discovery Confidentiality Order, due to issues concerning her identity. Specifically, Santa Lucia claims to be the identical twin sister of a Ms. Angela Khorozian. She argued that if she were to be confused on the videotape of the deposition with her sister Angela Khorozian, she might face danger from third parties. Plaintiff, in contrast, contends that Santa Lucia and Ms. Khorozian are in fact the same person and that Santa Lucia has been trying to conceal this fact. Related to this issue, presently before the Court are two intervention motions by an adversary of Santa Lucia in a Florida action, *see infra* n.2, who also contends that Santa Lucia and Ms. Khorozian are one and the same person. The issue of has led to significant disputes in this action, but none that must be resolved in order to decide the present motions. Notably, Ms. Khorozian was also convicted in a factually unrelated case in this Court of Conspiracy to Defraud the United States under 18 USC § 371 and Bank Fraud under 18 USC § 1344 and sentenced to a term of imprisonment of 18 months. *See U.S. v. Angela Khorozian*, 00-CR-393 (WHW), *aff'd*, 333 F.3d 498 (3d Cir. 2003) (affirming conviction).

Khorozians filed motions for reconsideration of the Court's Order compelling her videotaped deposition. *See* ECF Nos. 56, 61. As a result of defendants' failures to sit for depositions as noticed, plaintiff moved to strike defendants' Answers. ECF No. 55.

The Court set an in person conference for December 2, 2016 to address the issues raised by these motions. Just before that conference, the Court received a request from Santa Lucia's counsel to convert the conference to a settlement conference at which defendants' insurer would be present. The Court agreed. After the Court met with counsel on December 2, 2016, a tentative settlement was reached. Plans were subsequently made for the parties to finalize the settlement and place the terms of settlement on the record in Court on December 9, 2016.

### C. December Settlement On The Record

On December 9, 2016, counsel for each of the parties was present in Court: Donald Burke, Sr., Esq. and Donald Burke, Jr., Esq. of Law Offices of Donald F. Burke for plaintiff, Victoria Airgood, Esq. of Hill Wallack LLP for the Khorozian defendants, and Christine McGuire, Esq. of Mayfield, Turner, O'Mara & Donnelly P.C. for defendant Santa Lucia. *See* ECF No. 90 (Transcript of December 9, 2016 Settlement Hearing) at 1-3. Defendants Varoujan Khorozian (on behalf of himself and the Estate of his deceased son, defendant Derek Khorozian) and Kyle Khorozian also were present in person in Court for the settlement hearing. *Id.* at 3. Defendant Aida Santa Lucia participated in the hearing by telephone. *Id.* Plaintiff CGB was not present in Court, but her counsel represented that they had her authorization to speak for her at the hearing. *Id.* at 4.

The Court sealed the record of the hearing as the parties were about to place settlement terms on the record that they agreed would be kept confidential. *Id.* at 4. At the outset of the sealed portion of the hearing, ██████████████████████████████████

████████████████████████████████████████████████████████████





The following colloquy between the Court, counsel and defendants then took place:







ECF No. 90 at 21-23.

### D. Post-Settlement-Hearing Proceedings

On December 12, 2016, the Court issued the District's form 60-Day Order Administratively Terminating Action. ECF No. 89. That Order began with a preamble reciting that the Court had "held an in-person conference on December 9, 2016, at which a confidential settlement was placed on the record." *Id.* The Order further provided that within sixty days, the parties were to file all necessary papers to dismiss the action under Federal Rule of Civil Procedure 41, or, if an agreement as to such papers could not be reached, request that the action be reopened. *Id.*

On February 7, 2017, a few days before the 60-day period of the December 12, 2016 Order was scheduled to expire, defendants filed a letter requesting a thirty-day extension of the 60-Day Order period, which was opposed by Plaintiff. ECF Nos. 91, 92. The Court granted defendants'

8

request and extended the time to dismiss the action or seek its reopening until March 3, 2017. ECF No. 93.

On March 2, 2017, defendants filed a motion to seal retroactively all documents on the public docket containing plaintiff's allegations, including the Complaint, or in the alternative, to vacate the discovery confidentiality order and remove all designations of discovery as "confidential" or "attorneys' eyes only." ECF No. 94. That same day, plaintiff filed a request seeking leave to file a motion to enforce the settlement and for sanctions and attorneys' fees against defendants. ECF No. 96. Defendants opposed this request. ECF No. 98. The Court held a telephone conference on March 17, 2017, and on that day issued an Order terminating defendants' motion to seal with leave to refile after meeting and conferring with counsel, and granting plaintiff leave to file a motion to enforce the settlement. ECF No 100. Defendants did not refile their motion to seal.

On April 24, 2017, plaintiff filed a motion to enforce the settlement. ECF No. 101. On May 1, 2017, defendants filed cross-motions for rescission or reformation of the settlement, which included affidavits from several individuals in Cameroon. ECF No. 102, 103. On May 8, 2017, plaintiff filed a cross-motion seeking to strike the affidavits in support of defendants' cross-motions as hearsay. ECF No. 105.

The undersigned held an in-person conference on June 6, 2017 to seek to resolve informally the issues raised by the parties' motions, but that effort was unsuccessful. Two full days of settlement conferences subsequently were conducted by Magistrate Judge Michael A. Hammer on August 22 and 31, 2017. Those efforts to resolve the parties' differences also were unsuccessful.

Having been advised by Judge Hammer that settlement efforts had failed, the undersigned on August 31, 2017, ordered the parties to file supplemental briefing on the issue of this Court's subject matter jurisdiction over the pending motions in light of the Supreme Court's decision in

*Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375 (1994).  The parties submitted

those supplemental briefs on September 11, 2017.  ECF Nos. 132, 133, 134, 135.[2]

By Order of October 3, 2017, the Court indicated that it had concluded that it had retained

subject matter jurisdiction over the parties' pending motions because it had only administratively

closed, and not dismissed, the action.  ECF No. 140.   Noting that defendants' cross-motion to

rescind or reform the settlement agreement raised disputed factual issues concerning whether

plaintiff had breached the confidentiality provision of the settlement, it set an evidentiary hearing

for October 13, 2017 at which the parties would be required to "present live witnesses . . . as the

Court will not admit hearsay evidence."  *Id.* at 2.

The Khorozian defendants' counsel, Ms. Airgood, by letter of October 5, 2017, sought an

adjournment of the hearing on the grounds of the unavailability of another attorney in her firm

who wished to participate in the hearing and that several Cameroonian witnesses they wished to

present at the hearing, including two whose affidavits had been submitted in support of the cross-

---

[2] During this general timeframe, there were also several other applications in or relating to
this case filed by non-parties to this action.  First, on August 29, 2017, Jeffrey Marc Siskind, Esq.,
an individual involved in a bankruptcy proceeding involving a Florida corporation in which Santa
Lucia is allegedly the sole officer and director, filed a motion to intervene for the purpose of
obtaining sealed documents pertaining to the identity of Santa Lucia.  ECF No. 131.  Mr. Siskind
alleged that during discovery of the bankruptcy proceeding, he learned that "Angela Khorozian
has adopted an alias, and holds herself out as Aida Santalucia in order to [keep] secret information
concerning her criminal history."  *Id.*  Defendants oppose the motion.  ECF No. 136, 137.

Second, on September 29, 2017, one of the insurance companies that had been involved in
the settlement proceedings in this case, "Great Northern Insurance Company, a Chubb Group
Company," filed a separate action seeking to "interplead and deposit into the Registry of the Court
the monies . . . it has agreed to pay in connection with a settlement entered on the record on
December 9, 2016" in the instant matter.  *See Great Northern Insurance Company v. C.G.B.*, No.
17-7640-SDW-LDW (D.N.J. 2017).  Great Northern Insurance Company avers in the intervention
complaint that the filing of that action was necessitated by a demand on it by Varoujan Khorozian
that it not remit the agreed settlement funds to plaintiff but instead deliver the funds to Mr.
Khorozian's "independent counsel" to be held by such counsel until he "exhausts all legal remedies
available to [him], including appeals."  *See id.* at ECF No. 1 ¶ 19.

motion, Messrs. Ndi and Asongwed, would not be able to travel to the United States in time for the hearing due to visa issues. ECF No. 141. The Court initially denied the adjournment request on the grounds that the defense attorney who was unavailable for the October 13, 2017 hearing had never appeared in the case and because defendants' cross-motion did not indicate that any of the proposed Cameroonian witnesses had "first-hand personal knowledge of plaintiff's disclosure of the confidential terms of the parties' settlement agreement." *Id.* at 2.

Subsequently, the Court agreed to adjourn the hearing to October 16, 2017, after defendants' counsel represented that they would seek to present testimony at the hearing from an additional Cameroonian witness who they represented had personal knowledge of plaintiff's alleged breach, Mr. Nicholas Atangana. ECF Nos. 146, 153. The Court also advised the parties that it would allow those witnesses unable to travel to the United States to testify at the hearing from Cameroon by live videoconference. *See* ECF No. 176 (Transcript of October 12, 2017 Telephone Hearing) at 13. Defendants' counsel notified the Court they would be presenting two witnesses at the evidentiary hearing: Mr. Emmanuel Anyang Asongwed and Mr. Nicholas Atangana. ECF No. 160. Ms. Airgood informed the undersigned's Chambers staff by telephone that Mr. Asongwed would appear live and Mr. Atangana would appear by videoconference.

After further adjournment of the hearing date to allow time for defendants to arrange for the Cameroonian witnesses to travel to the United States for the hearing or to testify by videoconference from Cameroon, *see* ECF No. 177 (Transcript of October 13, 2017 Tel. Hearing) at 11, the evidentiary hearing was held on October 26, 2017. At the outset of the hearing, the Court denied a motion that had been filed by plaintiffs' counsel on October 24, 2017 seeking to vacate the Court's order directing the evidentiary hearing. *See* ECF Nos. 161; Transcript of October 26, 2017 Evidentiary Hearing (hereinafter cited as "Tr.") at 9.

The Court also denied a request by defendants' counsel presented orally at the commencement of the hearing to continue the hearing to allow Mr. Atangana, who had been scheduled to testify by videoconference at the hearing, to testify live at a later date. Defendants' counsel represented for the first time at the commencement of the evidentiary hearing that Mr. Atangana had become unavailable to testify by videoconference because he had decided to travel that day to the American Embassy in Cameroon to seek permission to travel to the United States to testify live. Noting that the Court had given adequate opportunity for Mr. Atangana to testify at the October 26, 2017 hearing by not only excusing him from traveling to the Court to testify but also allowing him to testify from Cameroon via videoconference, it held that Mr. Atangana's decision to make himself unavailable to testify that day by purportedly making other plans was not sufficient excuse further to adjourn resolution of the long-pending motions. It stated, however, that if Mr. Atangana became available to testify later that day before the hearing concluded, he would be permitted to do so. The Court also denied defendants' application in the alternative to hand up a new affidavit from Mr. Atangana, reiterating its decision in the October 3, 2017 Order not to accept hearsay submissions that would not be subject to cross-examination on the disputed issue of whether plaintiff breached the confidentiality of the settlement agreement. *See* Tr. at 4-9, 107-12.

During the hearing that was subsequently held, defendants presented a single witness: Mr. Asongwed, whose affidavit defendants had also submitted in support of the cross motion. *See* ECF No. 102-3. Mr. Asongwed testified in a brief, direct examination that he received a telephone call from a person he now believes to be plaintiff in February 2017, in which she told him ▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Tr. at 17-18. He was then cross-examined extensively by plaintiff's counsel, *id.* at 21-103, and then testified briefly on redirect examination. *Id.* at 103-06. Details of his testimony are discussed below.

12

Following Mr. Asongwed's testimony, defendants' counsel did not have further witnesses to present at the hearing, and plaintiff's counsel declined to call any witnesses in rebuttal. *Id.* at 107, 113. The hearing concluded, with the Court's granting counsels' request to make post-hearing submissions in the nature of "a written summation or closing argument." *Id.* at 108. Plaintiff's counsel objected to the submission of any further evidence, arguing that the motion record should now be closed. *Id.* at 109-10.

All parties made post-hearing submissions, which, as stated above, were supposed to be in the nature of written summations. *See* ECF Nos. 168, 169, 170 and 173. Defendant Aida Santa Lucia and plaintiff, however, went beyond those permitted submissions by submitting new affidavits in their post-hearing submissions. See ECF Nos. 169-2 & 173-1. As the taking of evidence closed with the conclusion of the evidentiary hearing, and as the submission of the Atangana Affidavit subsequently filed by defendant Santa Lucia had already been denied by the Court at the evidentiary hearing, *see* Tr. at 4-9, 111-12, the Court does not consider the post-hearing affidavits from Santa Lucia and plaintiff in rendering this Report and Recommendation. It has, however, considered the post-hearing briefs submitted by the parties to the extent those briefs do not rely on the new affidavits and exhibits.

## II.    ANALYSIS

The pending motions require the Court to determine, first, whether an enforceable settlement was reached in Court on December 9, 2016, despite defendants' refusal subsequently to execute a written settlement agreement containing the same terms agreed on the record in court. Next, the cross-motions require the Court to determine whether plaintiff breached the confidentiality term of the settlement and, if so, whether that should result in rescission of the settlement agreement or reformation of its terms as sought by defendants.

Before reaching these issues, the Court briefly addresses its jurisdiction over this settlement-related dispute. As previously stated in its October 3, 2017 Order, the Court finds that it has retained jurisdiction over the instant matter, including the parties' respective motions, pursuant to its merely administratively terminating this action in the 60-Day Order. In *Kokkonen v. Guardian Life Insurance*, 511 U.S. 375, 381 (1994), the Supreme Court held that federal courts do not have jurisdiction over a motion to enforce a settlement agreement, "part of the consideration for which was dismissal of an earlier federal suit," and which does not have a provision "retaining jurisdiction." The *Kokkonen* Court, however, also "concluded that district courts are free to enforce settlement agreements if they 'reserve[d] jurisdiction'" to do so, and the Third Circuit clarified in *Freeman v. Pittsburgh Glass Works, LLC*, that it "view[s] administrative closings as a method of reserving jurisdiction." 709 F.3d 240, 248 n.7 (3d Cir. 2013). Where, as here, the Court administratively terminated the underlying action but a dismissal has not been entered, the Court concludes it has jurisdiction to hear the parties' motions. *See Freeman*, 709 F.3d at 247 ("[A]dministrative closings are not final orders," and "administrative closings have no effect on the district court's jurisdiction.").

## A. Motion to Enforce Settlement

The Court next turns to the issue of whether a binding settlement was reached on the record in Court on December 9, 2016. There is no fully executed written settlement agreement because defendants refused to sign the agreement submitted to them by plaintiff's counsel that contained the same terms put on the record on December 9, 2016. *See* ECF at 102-2 at ECF pp. 12-20. Instead, defendants insisted that additional terms not previously agreed by the parties, and some of which were contrary to the terms of the settlement put on the record on December 9, 2016, be included in a revised settlement agreement. These included a provision that "Plaintiff agree not to testify concerning the matters alleged in her Complaint, unless ordered by a court to do so"; that

14

plaintiff, in direct contradiction of the December 9, 2016 agreement on the record to treat discovery materials as Attorneys Eyes Only, instead agree "for the confidentiality of discovery provision to be removed, to allow all parties to freely use all discovery provided in the matter"; that "the sequence of settlement events [be] modified" so as "to require that the voluntary dismissals as to the Khorozian defendants be filed prior to the settlement checks being forwarded to plaintiff's counsel"; and for the translation of the settlement agreement into French for plaintiff to sign a French and English version. *See* ECF No. 102-2 at ECF pp. 24-25.   Plaintiff did not agree to the revised terms.

For the reasons set forth below, the undersigned recommends that the District Court find that the agreement placed on the record in Court on December 9, 2016 constitutes a binding and enforceable settlement agreement, notwithstanding the lack of a fully executed written settlement agreement.

### 1. *Legal Standards*

A motion to enforce a settlement agreement is generally treated under the same standard as a motion for summary judgment. *Natale v. E. Coast Salon Servs., Inc.*, No. 13-1254 (NLH), 2016 WL 659722, at *2 (D.N.J. Feb. 17, 2016); *Leonard v. Univ. of Del.*, 204 F. Supp. 2d 784, 786 (D. Del. 2002), *aff'd* 80 F. App'x 286 (3d Cir. 2003).  Where questions of fact exist, the Court may take evidence and perform fact-finding necessary to resolve the motion. *See McDonnell v. Engine Distribs.*, 314 F. App'x 509, 511 (3d Cir. 2009).

The instant motions will be analyzed under New Jersey law, as the parties agreed on the record that the settlement was to be governed by the laws of New Jersey, ECF No. 90 at 17, and a settlement agreement is a contract, the enforcement of which is governed by state law. *See United States v. Struble*, 489 F. App'x 599, 602 (3d Cir. 2012); *Excelsior Insurance Co. v. Pennsbury Pain Center*, 975 F. Supp. 342, 348-49 (D.N.J. 1996).  New Jersey has a "strong policy of enforcing

settlements . . . based upon the notion that the parties to a dispute are in the best position to determine how to resolve a contested matter." *Brundage v. Estate of Carambio*, 195 N.J. 575, 601 (2008) (internal quotations omitted). In furtherance of that policy, New Jersey courts "strain to give effect to the terms of a settlement wherever possible," and settlements will be enforced "absent compelling circumstances." *Id.*

An enforceable contract arises from offer, acceptance, and sufficient consideration. *Creek Ranch, Inc. v. New Jersey Turnpike Authority*, 75 N.J. 421, 430 (1978). The parties must agree and manifest an intention to be bound by essential terms that are sufficiently definite that the performance to be rendered by each party can be ascertained with reasonable certainty. *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 435 (1992). Under New Jersey law, the parties are bound by a settlement agreement even absent a writing so long as they have orally agreed to the essential terms. *Zong v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 632 F. App'x 692, 694 (3d Cir. 2015) (quoting *Green v. John H. Lewis & Co.*, 436 F.2d 389, 390 (3d Cir. 1971). *See also Kelly v. Boeing, Inc.*, 513 F. App'x 131, 134 (3d Cir. 2013) ("A settlement agreement is binding once the parties express mutual assent to its terms and conditions, and need not be reduced to writing to be enforceable."); *McDonnell v. Engine Distribs.*, No. 03-1999, 2007 WL 2814628, at * 3 (D.N.J. Sept. 24, 2007) ("[I]t is sufficient if the parties orally agree on the essential terms, even though they contemplate the later execution of a formal document to memorialize their undertaking.") (citation omitted)).

### 2. *Analysis*

The settlement terms that were placed on the record on December 9, 2016 formed a contract between the parties because the terms of their agreement were definite, supported by consideration, and supported by a meeting of the minds. First, with respect to whether there was an agreement to sufficiently definite terms, the parties' counsel placed on the record extensive and specific

settlement terms.  Far from a barebones recitation of an agreement of payment in exchange for a release, the settlement that was put on the record was exceedingly detailed.  ██████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

*See* ECF No. 90 at 16-19.

Second, the parties' agreement was clearly supported by consideration.  Most fundamentally, ████████████████████████████████████████████████

██████████████████████.  This alone is a sufficient *quid pro quo* to constitute consideration.

Third, there is no doubt that the settlement placed on the record reflected a meeting of the minds as to the parties' agreement to the settlement terms.  ██████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████

To the extent that defendant Santa Lucia now argues that plaintiff's not being present at the December 9, 2016 hearing demonstrates that "there is no evidence that there was any meeting of the minds" or that a contract for settlement was ever formed,  ECF No. 103 at 17, that assertion is patently meritless.  Plaintiff was represented at the hearing by counsel who, as officers of the court, explicitly stated that they had plaintiff's authority to speak for her at the hearing and that

17

they she had agreed to the terms of the settlement placed on the record.  ECF No. 90 at 4, 22-23.

"It is a well-settled principle that agreements 'made by attorneys when acting within the scope of

their authority are enforceable against their clients.'"  *Anne M. Trufolo Living Tr. v. Trufolo*, No.

A-3961-13T3, 2015 WL 5971396, at *3 (N.J. Super. Ct. App. Div. Oct. 15, 2015) (emphasis

omitted; citing *Jennings v. Reed*, 381 N.J. Super. 217, 230 (App. Div. 2005)); *accord McDonnell*,

2007 WL 2814628, at *8 ("Under New Jersey law, settlement stipulations made by attorneys when

acting within the scope of their authority are enforceable against their clients.").  As plaintiff has

never asserted that her attorneys did not in fact have the requisite authority to bind her, but rather

has taken the contrary position by moving to enforce the settlement, all evidence before the Court

demonstrates the parties' meeting of the minds on the settlement terms stated at the December 9,

2016 hearing.

Further, although it was contemplated that the settlement terms placed on the record would

be memorialized in a written agreement, the absence of that writing under these circumstances

does not render the settlement unenforceable.  As stated above, under New Jersey law, it is

sufficient to create a binding agreement "if the parties orally agree on the essential terms, even

though they contemplate the later execution of a formal document to memorialize their

undertaking." *McDonnell*, 2007 WL 2814628, at *3.  Accordingly, the Court finds that each

party's agreement to be bound by the essential terms of the confidential agreement as recited on

the record created an enforceable settlement agreement, despite the later failure to execute a written

document memorializing such terms. *See id.* ("As long as the parties orally agree to the essential

terms, the settlement will be enforced notwithstanding the fact that a writing does not materialize

because a party later reneges.") (citation omitted)).  Moreover, given that the lack of a fully

executed written settlement agreement is due to defendants' refusal to sign the written agreement

memorializing the terms to which they already had agreed explicitly when they were before the

Court on December 9, 2016, its absence should not equitably, much less legally, provide a basis to deny enforcement of the settlement. For these reasons, the undersigned recommends finding that by virtue of the recitation on the record and the parties' agreement to the essential terms of the confidential agreement, the parties entered into an enforceable, binding settlement agreement.

**B. Defendants' Cross-Motion For Rescission Or Reformation Of The Settlement Agreement As A Result Of Plaintiff's Alleged Breach**

Defendants argue in their cross-motion that even if the Court should find a binding settlement agreement exists, plaintiff is not entitled to enforcement of that contract because she breached the essential settlement term of confidentiality. They assert that plaintiff breached her confidentiality obligations by revealing the existence of a settlement and the settlement amount. They argue that this alleged revelation by plaintiff in turn caused those who received that information to conclude that plaintiff's receipt of such finds was due to an implicit admission of liability by defendants, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮ ECF No. 102-4 at 16. Defendants further contend plaintiff intends to "continue her publication of her allegations and the settlement terms through adverse testimony in unrelated lawsuits in which the Khorozians have an interest." *Id.*

    *1.   Cross-Motion For Rescission*

        a.   Legal Standards

Because "[s]ettlement of litigation ranks high" in New Jersey public policy," New Jersey courts generally refuse to vacate settlements agreements "absent a demonstration of fraud or other compelling circumstances." *Nolan by Nolan v. Lee Ho*, 120 N.J. 465, 472 (1990) (citations omitted). Before vacating a settlement, New Jersey courts "require 'clear and convincing proof' that the agreement should be vacated.'" *Id.* at 472. *Accord Lucas Dev., LLC v. Lucas Bros.*, No. A-5829-06T1, 2008 WL 2330196, at *5 (N.J. Super. Ct. App. Div. June 9, 2008) ("There must be

'clear and convincing proof' to vacate a settlement agreement."). As the Court recommends finding that a binding settlement agreement exists, defendants bear the burden of proving by clear and convincing evidence that plaintiff engaged in conduct that constituted fraud or demonstrating other compelling circumstances which would warrant vacating the settlement. *See Bowles v. New York Liberty*, No. 11-3529 ES, 2014 WL 7148916, at *4 (D.N.J. Dec. 15, 2014) ("[W]here a contract of settlement is actually held to exist . . . the party seeking to vacate the settlement must show compelling circumstances.") (quoting *Amatuzzo v. Kozmiuk*, 305 N.J. Super. 469, 475 (App. Div. 1997); *Stewart v. Greyhound Lines, Inc.*, No. 09-2977 RBK/KMW, 2012 WL 15320, at *3 (D.N.J. Jan. 4, 2012); *Douris v. Hopewell Twp.*, No. 10-2650 FLW, 2012 WL 481177, at *2 (D.N.J. Feb. 14, 2012) ("Any ground for rescission must be established by clear and convincing evidence.").

The Court ordered on October 3, 2017 that an evidentiary hearing would be held for the purpose of hearing proofs on defendants' cross-motion, noting that New Jersey law requires that "'[o]n a disputed motion to enforce a settlement, a hearing must be held to establish the facts unless the facts are uncontroverted,' *Hidalgo v. City of Atl. City*, No. 15-2929 (JBS)(JS), 2016 U.S. Dist. LEXIS 58388, at *2 (D.N.J. May 2, 2016) (citing *Polanco v. Dabney*, 2015 N.J. Super. Unpub. LEXIS 164 (N.J. App. Div. Jan. 29, 2015)." ECF No. 140. Although the Court *sua sponte* determined it was required to hold the hearing, it notes that the Khorozian Defendants also had requested such a hearing. *See* ECF No. 110. The Court determined that the scope of the hearing would be to receive proofs on the only genuinely disputed issue raised by the motions: whether plaintiff breached the settlement agreement. ECF No. 140.

b. Analysis

Defendants contend that they are entitled to rescission or reformation of the settlement agreement because plaintiff breached the confidentiality of the settlement agreement by (1)

disclosing the "fact" of the settlement; (2) planning to testify against them in other unrelated actions in the future; and (3) revealing to third parties the agreed settlement amount. In support of these contentions, they submitted five affidavits with their cross-motion and the testimony of one live witness at the evidentiary hearing. The Court recommends finding that these submissions do not constitute the clear and convincing proof necessary to vacate (or "rescind") the settlement agreement.

### i.  Plaintiff's Alleged Improper Disclosure Of The "Fact" Of Settlement

At the outset, the Court finds that there are no grounds for finding that plaintiff breached the settlement agreement by disclosing the "fact" of settlement. The settlement agreement placed on the record on December 9, 2016 did not require the "fact" of settlement to be confidential, only the "terms" of that settlement. *See* ECF No. 90 at 4, 5, 16-17, 18. No party asked that the docket not disclose that the action was being discontinued as a result of a settlement. *See generally* ECF No. 90. To the contrary, no party objected at the conclusion of the December 9 hearing when the Court stated its intention to enter a 60-day Order, ECF No. 90 at ECF pp. 25-26, even though the District's standard form of 60-day Order recites that the action is being administratively terminated because the parties have reached a settlement in principle.

In any event, upon entry of the 60-day Order in this case on December 12, 2016, the "fact" of settlement was part of the public record. ECF No. 89. Therefore, plaintiff could not have breached any confidentiality obligation by revealing to a third party merely that the lawsuit had been settled (even if there had been competent evidence presented that she had done so).

### ii.  Plaintiff's Alleged Breach of Confidentiality Through Future Testimony

Further, to the extent defendants argue that plaintiff "will breach" the settlement agreement's confidentiality clause by testifying against the Khorozians in lawsuits in the future about the settlement, that argument is too speculative to support a claim for anticipatory breach.

21

"An anticipatory breach is a definite and unconditional declaration by a party to executory contract – through word or conduct – that he will not or cannot render the agreed upon performance." *Ross Systems v. Linden Dari-Delite, Inc.*, 35 N.J. 329, 340-41 (1961).  Other than a few vague statements by Mr. Khorozian and Santa Lucia in their affidavits that they had learned from some unspecified source that plaintiff planned to testify about the settlement in the future, ECF Nos. 102-1 ¶ 12, 103-5 ¶ 7, no evidence was presented by defendants to support the proposition that plaintiff made a "definite and unconditional declaration" that she will not abide by the confidentiality provision of the settlement agreement in the future.  Therefore, there is no viable basis for a finding of breach or anticipatory breach of the confidentiality clause on this ground.

### iii. Plaintiff's Alleged Disclosure Of The Confidential Settlement Amount

This leaves only the contention that plaintiff breached the confidentiality clause by disclosing the amount it had been agreed she would be paid in settlement.  The Court recommends finding that defendants have not met their burden of proof that plaintiff in fact disclosed any confidential term of the settlement.

As an initial matter, the affidavits submitted by defendants in support of their cross-motion do not provide admissible evidence that plaintiff breached the settlement agreement.  These affidavits were from defendant Varoujan Khorozian, defendant Aida Santa Lucia, the Khorozian Defendants' counsel of record, Victoria Airgood, Esq., a Cameroonian citizen named Emmanuel Anyang Asongwed, and a Cameroonian citizen named Clement Ndi.  *See* ECF Nos. 102-1, 102-2, 102-3, 103-5 and 104.  None of the affiants purported to have direct personal knowledge that plaintiff had disclosed the settlement amount to any third party to the agreement.   Of the five affiants, only Mr. Ndi even attributed the disclosure of the settlement amount indirectly to plaintiff, claiming in his March 29, 2017 affidavit that "[w]hen I recently was shopping I was approached by one of Plaintiff's friend, Mr. ATANGANA Nicolas, that wanted to know from me if it was true

22

Plaintiff's claim that she secured a ██████████████ from the lawsuit she filed . . . ."
ECF 104 ¶ 18.

The Court does not consider this statement in Ndi's affidavit to be competent evidence of

plaintiff's breach for several reasons. First, it is double-layered hearsay, which would require the

Court to accept for the truth of the matter asserted not only the out-of-court statement of Mr. Ndi

but also the statement Mr. Ndi attributes to Mr. Atangana. This is not appropriate, as there is no

exception to the hearsay rule that would allow the Court to consider even one layer of this hearsay,

much less two. *See* Fed. R. Evid. 801, 802 and 805. Second, the affidavit is not properly sworn

in the manner required by 28 USC § 1746 for declarations sworn outside the United States.[3]

Finally, the content of the affidavit is contested by plaintiff, who did not have the opportunity to

cross-examine Mr. Ndi about its contents. This is why the Court gave an opportunity for Mr. Ndi,

Mr. Atangana and the other Cameroonian witnesses to testify live in Court or via videoconference

from Cameroon. *See Amatuzzo*, 305 N.J. Super. at 474-75. These witnesses did not appear, despite

having been provided this opportunity.[4]

Therefore, the Court recommends granting plaintiff's motion to strike defendants'

affidavits as hearsay to the extent set forth above, as the Court may not rely on hearsay statements

to resolve disputed issues of fact, but denying the motion to the extent the Court considers the

affidavits on other, undisputed issues discussed elsewhere in this Report and Recommendation.

The Court further notes that because plaintiff's affidavit denying the breach, ECF No. 112-1 at

---

[3]     Whereas the declarant is required to swear "I declare (or certify, verify, or state) under
penalty of perjury under the laws of the United States of America that the foregoing is true and
correct," 28 U.S.C. § 1746(1), this declarant merely "swear[s] to the above statements to be true
to the best of my knowledge and belief." ECF No. 104 at 4.
[4]     For these same reasons, the Court recommends finding that the affidavit of Mr. Atangana
belatedly offered at the evidentiary hearing should not be considered as competent evidence on the
issue of plaintiff's alleged breach.

ECF p. 11, is similarly not subject to cross-examination, the Court has not considered its contents in issuing this Report and Recommendation.

Consequently, defendants are left solely with the live testimony of Mr. Asongwed at the evidentiary hearing to meet their burden of proof on their cross-motion. Mr. Asongwed described himself as an employee of the government of Cameroon. Tr. at 14. He testified that a person he now believes was plaintiff called him on his private mobile telephone number in February 2017 to tell him that she ███████████████████████ *Id.* at 17-18, 21, 55. Having reviewed the affidavit Mr. Asongwed submitted to the Court and having had the opportunity to hear his testimony live for several hours in Court on both direct and cross-examination, having observed Mr. Asongwed's demeanor and having carefully considered his testimony, the Court does not find Mr. Asongwed to be credible in his assertions that plaintiff contacted him and revealed the amount of the settlement.

Mr. Asongwed's testimony was fraught with inconsistencies that undermined his credibility. Foremost among these was that his testimony at the hearing that plaintiff called him to reveal the settlement amount was completely absent from his affidavit submitted by defendants in support of the cross-motion. See ECF No. 102-3. In that April 2017 affidavit, Mr. Asongwed swore only that:

> In March 2017 the Ministry of Housing & Urban Development of Cameroon came to learn of the settlement of a lawsuit [plaintiff] filed in New Jersey entitled C.G.B. v. AIDA SANTA LUCIA, VAROUJAN KHOROZIAN, KYLE KHOROZIAN, DEREK KHOROZIAN – CIVIL ACTION NO. 2:15-cv-03401-SDW-LDW, and of the claims that she made in this lawsuit. This led to the termination of Consolidated involvement in the Nkombassi City Project and the cancelation of other contracts that were negotiated and pending with Consolidated, the SantaLucia family, and Mr. Khorozian.

*Id.* ¶ 6.

When the Court inquired of Mr. Asongwed during the hearing why he had not included in his April 2017 affidavit that plaintiff had contacted him and disclosed the settlement amount, he

24

essentially asserted that the above-quoted language from his affidavit *did* disclose that information. *See* Tr. at 96-97. The Court finds this testimony incredible in that the affidavit, which the affiant acknowledged at the hearing he knew must be complete, *id.* at 27, does not to any reasonable reading indicate that plaintiff ever disclosed the settlement amount or anything else to Mr. Asongwed in a call in February 2017. The affidavit states that the government ministry "came to learn" -- without stating the source from which it learned -- of the "claims in the lawsuit" in March 2017. The affidavit does not mention any contact between Mr. Asongwed and the plaintiff at all. It does not state that the government learned in March 2017 of the settlement amount but rather the "claims in the lawsuit," which are publicly available on the Court's docket. It states that the Cameroon government learned of these claims in March 2017, whereas Mr. Asongwed stated at the hearing that he was certain he received the purported telephone call from plaintiff in *February* 2017. *Id.* at 54.

These inconsistencies between Mr. Asongwed's testimony and his affidavit on the key fact at issue in the hearing, together with the demeanor and testimony of Mr. Asongwed in attempting to explain these inconsistencies, was one of several bases for this Court's finding that Mr. Asongwed's testimony lacked credibility. The Court also noted other inconsistencies between his live testimony and the content of his six-paragraph affidavit. *Compare* Tr. at 43-45 *with* ECF No. 102-3 ¶ 4 (inconsistency between Mr. Asongwed's understanding of ownership of Consolidated Engineering in affidavit and at hearing); Tr. at 45-50 *with* ECF No. 102-3 ¶ 4 (inconsistency between his understanding of whether or not there is information about Cameroonian construction project in which defendants were involved on Cameroon government website).

Mr. Asongwed further did not explain to the satisfaction of the Court as factfinder why plaintiff would have called him to disclose the settlement amount. Mr. Asongwed acknowledged that the only time he had ever met and had contact with plaintiff prior to the purported February

2017 call was during a single two-week trip to the United States in May 2014 when he had come here to work with the Khorozians and persons from a company called Transafrica/Nutech ("Transafrica"). *See* Tr. at 15, 16, 20, 50-51, 52. He described their dealings during that trip as discussions between fellow Cameroonians. *Id.* at 52. He acknowledges he never spoke with her again after that 2014 trip for the three-year-plus period between then and the alleged phone call from plaintiff in February 2017. *Id.* at 53-54. It therefore seems highly improbable to the Court that plaintiff, a person he hardly knew, would call Mr. Asongwed years later to provide him with confidential information about the settlement of her lawsuit in the United States. The Court did not find the reason he provided – that plaintiff was seeking his help as a Cameroonian official – seemed genuine. Combined with the absence of any description of this call in Mr. Asongwed's affidavit, the Court finds this further undermines the credibility of Mr. Asongwed's testimony.

Moreover, Mr. Asongwed could not explain how plaintiff even would have had his mobile telephone number, to which she allegedly placed the call; he merely speculated that "it's easy for a worker [with Transafrica] to easily have my number." *Id.* at 55. Further Mr. Asongwed could not state from what phone number the alleged call from plaintiff had come, and he apparently made no search for it in his mobile telephone records. *Id.* at 24, 25. Instead, he just stated that he could not be expected to have such information given that he claims to receive thousands of phone calls a week and more than a hundred calls per day. *Id.*

Even more puzzling was that Mr. Asongwed equivocated throughout his testimony as to whether he was certain the call he received in February 2017 was even from the plaintiff. Instead, he hedged in identifying plaintiff as the caller, stating several times essentially that the call came from someone he later learned to be plaintiff. *See id.* at 17 ("the plaintiff called and/or let me say *somebody* called and introduced herself as *this, this, this*") (emphasis added); *id.* at 19 (responding to a question as to whether he was certain it was the plaintiff who called, "At the beginning I was

26

not well certain."); *id.* (responding to the Court's question as to whether it was plaintiff who called him, "I am -- I don't – I will not say with certainty. Because I hadn't conversation with her."); *id.* at 20 (responding to the Court's question whether the person "said they were C.G.B.," by saying, "Yes. Yes. *I will say* yes.") (emphasis added); *id.* at 53-54 (stating that "I now realize that she was the one" who called him in early 2017). This uncertainty on the key issue in the hearing – whether it was plaintiff who disclosed a confidential settlement term to him – gave the Court little confidence in the accuracy and truthfulness of his testimony.

The Court further found Mr. Asongwed's testimony generally to be evasive. On multiple occasions throughout the hearing, he avoided answering the Court's or plaintiff's counsel's questions by providing non-responsive answers. On one occasion, he even refused to provide the information the Court repeatedly sought from him. *Id.* at 93.

There was also extensive testimony from Mr. Asongwed about the events surrounding his providing his affidavit to the Court and testifying at the hearing that caused the Court to regard his account of events as having been influenced improperly by defendants and their agents. Mr. Asongwed revealed that he had discussions concerning his affidavit and/or his hearing testimony beforehand with a principal of the Cameroonian company Transafrica named Ms. Appollonie Etembe Kono, *id.* at 37-38, together with Varoujan Khorozian and possibly Aida Santa Lucia. By way of background, Varoujan Khorozian describes Transafrica as the "joint venturer" of a company that he and defendant Santa Lucia represent and/or in which they or their family have an ownership interest. *See* ECF No. 102-1 ¶¶ 2, 3, 5. Mr. Asongwed acknowledged that he was aware that Mr. Khorozian, Ms. Santa Lucia and Ms. Kono have known each other and had business dealings together for at least 14 years. Tr. at 39-40, 89, 90-92. Indeed, the Court takes judicial notice that a Ms. Etembe Kono had testified at the criminal trial of Ms. Angela Khorozian,

27

Varoujan Khorozian's wife, some 15 years ago in connection with the bank fraud of which Ms. Khorozian was convicted. *See US v. Angela Khorozian*, 333 F.3d 498, 502, 506-07 (2003).

According to Mr. Asongwed, Transafrica's representatives were actively involved in preparing his April 2017 affidavit to the Court. He testified that he was asked to help prepare his April 2017 affidavit by Transafrica's attorney, Mr. John Mbufor, and that he called Ms. Kono from the attorney's office "to give her the content of my affidavit." Tr. at 30-34, 82, 83-84, 94; *see also* ECF No. 102-4 at 14 n. 3 ("Transafrica's attorney in Cameroon [is] John Mbufor Fonju."). In contrast, he said that he did not seek to obtain approval from his employer, the Cameroon government, before executing the affidavit. Tr. at 83-84.

Mr. Asongwed also testified that Ms. Kono had told him that he must go to the United States to testify at the evidentiary hearing. *See id.* at 98, 99, 100. Transafrica then reportedly paid for his flight from Cameroon to the United States for the hearing, *id.* at 76, and Ms. Kono accompanied him on the flight. *Id.* at 79, 80, 94, 99. Significantly, he stated that while conversing with Ms. Kono en route from Cameroon to the United States, Ms. Kono *stated to him* that *she* was aware that plaintiff ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 101.

Mr. Asongwed and Ms. Kono were then met at the airport on arriving in the United States by Varoujan Khorozian. *Id.* at 77, 79, 85. Mr. Khorozian accompanied Mr. Asongwed to his hotel room and, once there, called defendant Santa Lucia. *Id.* at 77-78, 85-86. While Mr. Asongwed claimed that they only discussed the time that the evidentiary hearing would take place and when Mr. Khorozian would be picking him up at the hotel in the morning before coming to Court, *id.* at 78, 85-86, the Court finds it lacking in credibility that a three-way call between Mr. Asongwed, Mr. Khorozian and Ms. Santa Lucia would be necessary to discuss merely what time he needed to be in court in the morning (particularly given that Ms. Santa Lucia did not even attend the hearing).

28

Further, Mr. Asongwed disclosed that Mr. Khorozian and Ms. Kono had instructed him what to disclose in his hearing testimony during a conversation in the car on the way to the courthouse. *Id.* at 87. He also stated that Ms. Kono was waiting in the courthouse for him while he testified. *Id.* at 80. He added that he "cannot [c]ome to talk on behalf of the [Cameroon] government when [Ms. Kono] is not there." *Id.* at 92 -93.

Given Mr. Asongwed's testimony that Ms. Kono was aware of the confidential settlement amount, together with the obvious cooperation between Mr. Asongwed, Ms. Kono, Mr. Khorozian and Ms. Santa Lucia, the Court questions whether Mr. Asongwed's testimony about the call from plaintiff was improperly influenced by defendants to advance their position on the cross-motions. For all of these reasons, the Court does not regard Mr. Asongwed's testimony on the issue of his call with plaintiff as credible. Therefore, it finds that defendants have not provided reliable evidence of any breach by plaintiff of the confidentiality provision of the settlement agreement, much less met their burden of demonstrating by clear and convincing evidence that there are compelling circumstances to vacate the settlement agreement.[5]

---

[5]     The undersigned further submits that it properly denied defense counsel's request for a continuance of unspecified length to enable Mr. Atangana to travel to the United States to provide live testimony on the issue of breach because the request was patently unreasonable under the circumstances. First, the defendants have provided no reason why Mr. Atangana was unable to participate at the hearing by videoconference as had been offered and arranged by the Court. The Court's information from defendants until the commencement of the hearing was that Mr. Atangana would testify remotely by videoconference, and there was certainly no request for an adjournment presented to the Court by defense counsel as of even the day before the hearing, *see* ECF No. 164. Thus, defendants' request at the hearing for an adjournment because Mr. Atangana inexplicably had decided to try to travel to the United States to testify live instead of participating by videoconference as had been arranged seemed to be a last minute attempt at delay calculated to be presented without prior notice to plaintiff's counsel and the Court. Second, there would have been no reason for Mr. Atangana to make himself unavailable to testify remotely at the hearing in order to seek a visa to travel to the United States to testify in person. The Court had made very clear to all counsel that this would be a one-day hearing, which is why the Court was accommodating the Cameroonian witnesses by allowing them to testify by videoconference from their country. *See* Transcript of October 12, 2017 call between Court and counsel at 13 (Court advised counsel that all witnesses at the hearing "have to be here for the hearing on the same day"

In any event, even if the Court had been provided with credible evidence of a breach of the provision, it would be unable to find that such a breach constituted the kind of clear and convincing evidence of "compelling circumstances" necessary to justify vacating the settlement agreement in light of defendants' own breach of the confidentiality provision. The defendants themselves disclosed more extensive confidential settlement terms publicly than they accuse plaintiff of having revealed. Specifically, they filed on the public docket the term sheet containing nearly every one of the confidential settlement terms, except the settlement amount, *see* ECF No. 102-1 at ECF pp. 13-16; ECF No. 102-2 at ECF pp. 15-18. They also disclosed throughout their motion papers confidential settlement terms. *See* ECF No. 102-1 ¶¶ 7, 9, 10, 13; ECF No. 102-5 at ECF pp. 13, 15ECF No. 103 at ECF pp. 7, 14; ECF No. 103-5 ¶ 14. Although the Khorozian defendants admit that "they have partially disclosed the non-redacted settlement terms" by filing them on the docket, they seek to minimize this admitted breach of confidentiality by arguing that the confidential terms they disclosed "are not unique to the this [sic] settlement and do not bear upon the parties' continuing dispute." ECF No. 144 at 2.

Defendants' unilateral determination, however, that the settlement terms they opted to disclose publicly were entitled to lesser confidentiality than the settlement term they claim plaintiff disclosed is not supported by the settlement placed on the Court record, in which the parties agreed that *all* of the settlement terms would remain confidential. Given that defendants are the only parties who indisputably disclosed publicly the confidential settlement terms, it would be

---

and that the Court "will agree to take [the African witnesses'] testimony via Skype or some other remote means"); Transcript of October 13, 2017 call between Court and counsel at 11, 14-15 (adjourning the hearing from October 16 to October 25, 2017 to enable defendants' witnesses to testify at hearing either live or by videoconference, but emphasizing that hearing would be completed that day). Defendants have submitted nothing, either at the hearing or subsequently, that would demonstrate any good-faith reason that Mr. Atangana could not testify remotely as the Court had offered and arranged for him to do.

inequitable to grant defendants' motion seeking the equitable remedy of rescission, even if defendants had presented credible proof of plaintiff's disclosure of the settlement amount. *See Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945) ("he who comes into equity must come with clean hands").

Finally, the Court rejects as meritless the Khorozian defendants' request in their post-hearing submission that the Court draw an adverse inference from plaintiff's counsel's decision not to call plaintiff as a rebuttal witness at the evidentiary hearing. *See* ECF No. 168 at ECF p. 16. Defendants could have called plaintiff to testify if they wished, and indeed they initially designated her as a potential witness they intended to call. *See* Joint Witness and Exhibit List at ECF No. 150 at 2. As defendants bore the burden of proof at the hearing and decided not to call plaintiff as a witness, plaintiff's counsel were not required to call her or any other witnesses to testify in rebuttal. That plaintiff's counsel opted not to call any rebuttal witnesses, including plaintiff, after hearing Mr. Asongwed's testimony was their prerogative. Therefore, there is no basis to draw an "adverse inference" against plaintiff on this ground.

### 2. Cross-Motion For Reformation of Agreement

Defendants further cross-move to compel plaintiff to accept revisions to the settlement agreement. They seek to have the Court compel plaintiff to accept revisions to the settlement agreement, some of which are contrary to the terms agreed on the record on December 9, 2016.

Defendants' purported basis for seeking this relief is their need to counteract the harm alleged caused by plaintiff's disclosure of confidential settlement terms. As the Court finds no credible evidence of such disclosure, the factual basis for defendants' proposed relief founders.

Aside from the equitable remedies for a breach by plaintiff, which the Court finds are not available due to lack of proof of breach, defendants separately have no legal right to compel plaintiff to renegotiate the agreement that was reached on the record in Court on December 9,

2016. The parties agreed on the record that ███████████████████████████

██████████████████████████ ECF No. 90. *See also Ehrheart v. Verizon Wireless*, 609

F.3d 590, 593 (3d Cir. 2010) (holding a court "is not a party to the settlement, nor may it modify

the terms of a voluntary settlement agreement between parties.").

Moreover, reformation is an equitable remedy, and the Court finds nothing equitable about

acceding to defendants' demands to require plaintiff to accept new and different terms that were

neither part of, nor are consistent with, the binding settlement reached at the December 9, 2016

hearing. Therefore, the undersigned recommends that the District Court deny defendants' cross-

motion for reformation of the settlement.

### C. Plaintiff's Application For Attorney's Fees

Plaintiff's counsel seeks attorney's fees for their work on the motion to enforce, pursuant

to the Court's inherent authority to impose sanctions upon those who would abuse the judicial

process. ECF No. 101-1 at 8 (citing *Ayers v. Collins*, No. 11-5641-JBS-AMD (D.N.J. July 24,

2012)). Plaintiff's motion is not without basis. The clear terms of a binding settlement were

agreed on the record in December 2016, yet plaintiff still has not received the benefit of that which

was promised to her in settlement. Defendants, however, if they had a good-faith basis for

believing that plaintiff had breached the settlement agreement, had a colorable argument for some

relief. While there are substantial questions in the undersigned's view as to the bona fides of

defendants' conduct concerning the settlement, absent proof that defendants manufactured the

allegations of plaintiff's breach of confidentiality, this Court does not recommend departing from

the ordinary rule that each party bears its own costs and fees. Accordingly, in view of the

instruction of the Supreme Court of the United States that the "potent" power to sanction litigants

"be exercised with restraint and discretion," *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991), it

is recommended based on the present record that the District Court decline to exercise its authority to award plaintiff's attorney's fees in connection with the motion to enforce.

## III.   CONCLUSION

For the foregoing reasons, the Court recommends that plaintiff's motion to enforce the settlement agreement be **GRANTED**, plaintiff's motion to strike be **GRANTED IN PART AND DENIED IN PART**, plaintiff's motion for attorneys' fees be **DENIED**, and defendants' cross-motions to rescind or reform the settlement agreement be **DENIED**.

The parties are hereby advised that, pursuant to Fed. R. Civ. P. 73(b)(2), they have 14 days after being served with a copy of this Report and Recommendation to serve and file specific written objections to the Honorable Susan D. Wigenton, U.S.D.J.

Dated:  November 9, 2017

_s/ Leda Dunn Wettre_
**Leda Dunn Wettre**
**United States Magistrate Judge**

Original:     Clerk of the Court
     cc:     Hon. Susan D. Wigenton, U.S.D.J.
             All Parties